OPINION The petitioners concede the embezzled funds — $41,165 in 1962 and $5,650 in 1963 — constitute taxable income in those years, i.e., at the time the fictitious deposits were made. They contend, however, that these funds are properly chargeable as income to Melton, Barbara’s brother, who spent these funds and not to Barbara who embezzled them. We disagree. As we understand the facts, Melton approached Barbara and asked her either to loan or give him sufficient money to cover certain outstanding checks and to pay temporarily the living expenses of his large family at a time when he was down on his luck. Barbara, induced through considerations of blood relationship or sympathy, agreed to help him. For whatever reason, instead of advancing her own money, she decided to advance money she knew she could embezzle from her employer in the form of fictitious deposits to Melton’s account. Melton knew of the source of the money that was being made available to him and consented to this arrangement. He did not, however, participate in any way in the actual embezzlement of any of these funds. Barbara acted alone and of her own volition in that undertaking. As the creator of the income, Barbara chose to place it at Melton’s disposal. The character of all the transactions is typified in the instances where Barbara used the proceeds from her own paychecks to make good Melton’s bad checks and then reimbursed herself by means of fictitious deposits to her own account. These transactions bear the trappings of a gift or personal loan on her part followed by embezzlement of funds which she converted to her own use. While the fictitious deposits to Melton’s and Thelma’s accounts differ in form from the above-described transaction, we think in substance they are identical, i.e., gifts by her of funds representing money she embezzled from the bank. We see no reason nor do the parties ask us to distinguish between tlie above-described types of transactions. In all the transactions, Barbara exercised complete dominion and control over the embezzled funds. She beneficially enjoyed this income and, in effect, treated it as her own when she chose to place it at her brother’s disposal. Barbara’s exercise of control over these funds is sufficient for them to constitute income to her. Helvering v. Horst, 311 U.S. 112 (1940). In Geiger's Estate v. Commissioner, 352 F. 2d 221 (C.A. 8, 1965), affirming a Memorandum Opinion of this Court, involving similar facts, the taxpayer argued that the embezzled funds flowed directly from the bank to the depositor-beneficiaries of the fictitious deposits and did not pass through the embezzler’s hands. The court replied, at pages 231-232: That may be one way to describe it. Another, equally valid, is that the funds came to ⅜ ⅞ ⅜ [the embezzler] and were passed out or made available by her to the beneficiaries. These beneficiaries were the objects of * * ⅜ [the embezzler’s] bounty, not the bank’s. She was the force and the fulcrum which made those benefits possible. She assumed unto herself actual command over the funds. This is enough. Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed 916 (1930). We are not sympathetic with the claim that, because she may not have used the funds for personal needs, she is not to be taxed. She enjoyed benefits of a kind which obviously must have loomed large in her mind and have been important to her — status as the beneficiary donor to good causes and favored acquaintances, a reputation as an available friend in need, the acquisition, with respect to a “loan”, of the resulting obligation to her, and the like. Helvering v. Horst, supra, pp. 116-117 * * ⅜ The petitioners seek to distinguish Geiger's Estate v. Commissioner, supra, on the ground that the beneficiaries of the fictitious deposits in that case,-unlike Melton, were unaware of the nature of the deposits to their accounts. We d o not find this difference material. We hold that tlie embezzled funds are taxable to netitioners. Decisions wül be entered under Rule 50,