JOSEPH W. SULLIVAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sullivan v. Commissioner
Docket No. 15628-80.
United States Tax Court
T.C. Memo 1983-539; 1983 Tax Ct. Memo LEXIS 248; 46 T.C.M. (CCH) 1271; T.C.M. (RIA) 83539; August 31, 1983. Joseph W. Sullivan, pro se. Charles W. Maurer, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioner Joseph W. Sullivan's Federal income tax for 1976 in the amount of $41,482 together with an addition to tax for fraud under section 6653(b)[1] in the amount *249 of $20,741. The issues for decision are as follows: (1) Whether petitioner Joseph W. Sullivan understated his taxable income for the year 1976 by failing to report income realized from funds embezzled from his employer in the amount of $136,920; and (2) Whether petitioner Joseph W. Sullivan is liable for the addition to tax under section 6653(b) for fraud. FINDINGS OF FACT Petitioner Joseph W. Sullivan (hereinafter petitioner), resided in Sharon, Massachusetts at the time his petition was filed. Petitioner's return for 1976 was timely filed. On his return, he reported gross income of $5,734.75. Petitioner is an accountant by profession. He received a bachelor's degree in accounting from Bentley College, maintaining a B+ average overall. As part of his college accounting curriculum, petitioner took courses in Federal income taxation. Although he is not a certified public accountant in this country, petitioner is certified *250 by the Government of the Bahamas. Petitioner received the highest mark in the history of the Massachusetts civil service examination for State bank examiners. He also received the highest mark in the history of the New England region in the Government examination for Federal bank examiners. During 1976, the taxable year in question, petitioner was employed as comptroller by Subaru of New England, Inc. (hereinafter Subaru), a regional importer and distributor of Japanese motor vehicles, which is owned and controlled by Ernest Boch. As comptroller, petitioner was the chief financial officer for the corporation. His major duties included responsibility for cash receipts, expenditures, financial statements, payroll, and billing. tIn addition to his work for Subaru, petitioner also maintained a separate public accounting practice and was the owner of two businesses, the Plant Place and the Fun Place. Petitioner employed his brother, Daniel J. Sullivan, (hereinafter Daniel), to help him handle some of these separate business activities. Petitioner's employer, Subaru, maintained a checking account with the New England Merchants National Bank, Boston, Massachusetts. During the *251 taxable year 1976, the only persons authorized to sign and draw checks on this account were Ernest Boch and his brother, Richard Boch. In his capacity as the company comptroller, petitioner had lawful access to blank checks for Subaru's New England Merchants National Bank account; however, he was not authorized to sign or draw checks on the account. Petitioner's brother, Daniel, did not have lawful access to the blank checks for the Subaru account; nor was he authorized to sign such checks. In February 1976, petitioner, aided by Daniel, initiated steps to effectuate a plan through which ultimately $200,000 was embezzled from Subaru. The first step in the plan was the opening of three bank accounts by petitioner and his brother in different Boston-area banks. On February 10, 1976, petitioner opened an account in the name of New England Realty Company at the Boston Safe Deposit and Trust Company of Suffolk County, Massachusetts. Petitioner used the name "Joseph Hogan" in opening the account; however, the signature of "Joseph Hogan" on the account signature anthorization card was in petitioner's handwriting, and the company's tax identification number is just one number different *252 from petitioner's social security number. On the same day, February 10, 1976, Daiel, using the name "Daniel Flynn", opened an account in the name of Southeastern Transportation Services at the City Bank and Trust Company of Suffolk County, Massachusetts. On February 11, 1976, petitioner opened an account with the Walpole Mall branch office of the Hancock Bank and Trust Company of Norfolk County, Massachusetts. Petitioner opened the account in the name of New England Foreign Auto Parts; however, he signed his own name as the person authorized to draw checks from the account, and used his own social security number as the account's tax identification number. When he opened the account, petitioner explained to Robert C. Marsh, Jr., the branch manager who assisted petitioner in opening the account and witnessed petitioner sign the signature authorization card for the account, that New England Foreign Auto Parts was being established and financed by Ernest Boch as a separate business entity to purchase automobile parts more cheaply for Subaru automobiles. This explanation was later discovered to be false. Approximately one week later, on or about February 17, 1976, accounts *253 were opened at the following fourteen additional Boston-area Banks: 1. Homeowners Federal Savings and Loan Association 2. Dorchester Savings Bank 3. Hibernia Savings Bank
4. Boston Five Cents Savings Bank
5. First Federal Savings and Loan Association of Boston 6. Union Warren Savings Bank 7. Suffolk Franklin Savings Bank 8. Eliot Savings Bank 9. Charlestown Savings Bank
10. Workingmen's Cooperative Bank
11. Home Savings Bank 12. Volunteer Cooperative Bank
13. Provident Institution for Savings
14. Merchants Cooperative Bank
The actual embezzlement was executed in the following manner. During March 1976, seven checks were drawn by petitioner on Subaru's New England Merchants' National Bank account bearing the forged signature of Ernest Boch. These checks were deposited into the three accounts described above, which were initially opened by petitioner or Daniel on the dates and in the amounts as follows: Amount and Place of Deposit
City Bank
(Southeastern
Boston Safe
Hancock Bank
Check
Transportation
(New England
(N.E. Foreign
Number
Date
Services)
Realty Co.)
Auto Parts
7378
3/11/76
$ 34,885.00
7382
3/11/76
$30,500.00
7392
3/11/76
$25,000.00
7380
3/15/76
36,115.00
7393
3/16/76
25,000.00
7394
3/16/76
24,500.00
7401
3/18/76
24,000.00
TOTAL
$55,000.00
$50,000.00
$ 95,000.00
TOTAL ALL BANKS
$200,000.00
*254 Petitioner forged the signature of Ernest Boch appearing on the checks and covered up the forgeries through misaddition on Subaru's books. Although the endorsements on the copies of the forged checks are unclear, the handwriting of the endorsements on checks 7380 and 7401 (deposited in the Hancock Bank) and check 7393 (deposited in the Boston Safe Deposit and Trust) is that of petitioner. The handwriting of the endorsement on check 7394 (deposited in the City Bank and Trust Co.) is that of Daniel. After the embezzled funds were deposited into the three accounts, various amounts were withdrawn from those accounts. During March 1976, petitioner drew sixteen checks on the account of New England Foreign Auto Parts with the Hancock Bank and Trust Company on the dates and in the amounts as follows: Check
Number
Date
Amount
Payee
110
3/17/76
$7,500
J. W. Sullivan
111
3/17/76
9,000
Cash
112
3/18/76
9,000
Cash
113 (typed)
3/19/76
5,000
Union Warren Savings Bank
113 (script)
3/19/76
7,000
Cash
114 (typed)
3/19/76
5,000
Homeowners Federal Savings
and Loan Association
114 (script)
3/19/76
2,500
J. W. Sullivan
115 (typed)
3/19/76
5,000
The Hibernia Savings Bank
115 (script)
3/22/76
2,000
J. W. Sullivan
116 (typed)
3/19/76
5,000
The Boston Five Cents
Savings Bank
116 (script)
3/25/76
10,000
Joseph W. Sullivan
117 (script)
3/25/76
10,000
Joseph W. Sullivan
117 (typed)
3/19/76
5,000
First Federal Savings and
Loan Association
118 (typed)
3/19/76
5,000
Suffolk Franklin Savings Bank
118 (script)
3/20/76
1,000
J. W. Sullivan
119
3/19/76
5,000
Dorchester Savings Bank
*255 During March, 1976, petitioner drew eight checks on the account of New England Realty Co. with the Boston Safe Deposit and Trust Company on the dates and in the amounts as follows: Check
Signature
Number
Date
Amount
Payee
on check
110
3/12/76
$750
J. W. Sullivan
Joseph Hogan
111
3/16/76
20,000
Federal Reserve
Joseph Hogan
Bank of Boston
112
3/16/76
3,000
Joseph W. Sullivan
Joseph Hogan
113
3/19/76
5,000
Eliot Savings Bank
Joseph Hogan
114
3/19/76
5,000
Workingmen's
Joseph Hogan
Cooperative Bank
115
3/19/76
5,000
Charlestown Savings
Joseph Hogan
116
3/19/76
5,000
Daniel Sullivan
Joseph Hogan
117
3/29/76
5,000
Hancock Bank and
Joseph Hogan
Trust Company
In drawing the New England Realty Company checks petitioner used the name "Joseph Hogan"; however, the signature of "Joseph Hogan" on each of the checks was in the handwriting of petitioner. Further, it was stipulated that petitioner used the full amount of check number 111, $20,000, to purchase two Federal Treasury Notes. Similar withdrawal activity occurred in the account of Southeastern Transportation Services. On or about March 19, 1976, four *256 checks in the amount of $5,000 each were drawn on that account and were deposited into four of the fourteen banks listed above, one of those being the Home Savings Bank. In addition, on March 16, 1976, a person using the name "Daniel Flynn," drew a check in the amount of $15,000 on the account payable to petitioner. Petitioner used the full amount of this check to purchase uncut diamonds. To summarize the foregoing activity, on or about March 19, 1976, fourteen checks in the amount of $5,000 each were drawn on the three checking accounts initially opened by petitioner or Daniel. These fourteen checks were made payable to and deposited into each of the accounts opened at the fourteen banks listed above. Subsequent deposit and withdrawal activity in the accounts of the fourteen banks listed above occurred soon after the checks were deposited. On or about March 26, 1976, checks were drawn in the amount of $2,500 on each of the fourteen accounts and cash in the amount of $2,000 was also withdrawn from each of the fourteen accounts. Five of the $2,500 checks were redeposited in accounts in Norfolk County Trust Company and the Sharon Cooperative Bank. The $2,500 check drawn on *257 the Home Savings Bank account was made payable to Daniel, endorsed both by Daniel and petitioner, and deposited in the Sharon Credit Union. The disposition of the remaining checks and of the cash is not known. By April 1976, officials of the Hancock Bank and Trust Company had become suspicious of the excessive activity in the New England Foreign Auto Parts account. The branch manager, Robert C. Marsh, Jr. and his supervisor, Henry La Rochelle, met with Ernest Boch at his Subaru office to discuss their concern regarding the account. At the meeting, Ernest Boch examined the Subaru checks deposited into the account of New England Foreign Auto Parts and stated that his signature had been forged. Petitioner was then called into the meeting and was asked about the forged checks. Petitioner refused to answer any questions in the absence of his attorney. Petitioner did not at any time during this meeting mention Daniel's possible involvement in the forgeries. On May 5, 1976, the New England Merchants National Bank instituted suit in Suffolk County Superior Court against petitioner and Daniel to recover the amount of the forged checks drawn on the Subaru account. Judgment was *258 entered on June 14, 1976, in favor of the New England Merchants National Bank against petitioner and his brother in the amount of $200,000. During the taxable year 1976, New England Merchants National Bank recovered only $63,080 of the judgment. On May 19, 1976, petitioner was indicted in Norfolk County, Massachusetts, on three counts of uttering and publishing a forged instrument and on three counts of larceny of more than $100. The indictment was based on the checks deposited in the Hancock Bank and Trust Company in Norfolk County, Massachusetts. Petitioner pleaded guilty to each of these charges on January 3, 1977. Before accepting petitioner's guilty plea, the presiding judge asked petitioner if he knew what he was doing when he forged the checks. Petitioner answered that he did. On June 9, 1976, petitioner was indicted in Suffolk County, Massachusetts, on one count of larceny of more than $100. On the same day, Daniel was also indicted in Suffolk County on four counts of uttering and publishing a forged instrument and one count of larceny of more than $100. The Suffolk County indictments of petitioner and Daniel were based on the checks which were deposited in the *259 City Bank and Trust Company and the Boston Safe Deposit and Trust Company in Suffolk County, Massachusetts. In a motion dated January 12, 1977, petitioner requested that his Suffolk County trial date be advanced because he intended to plead guilty to the charges. Petitioner pleaded guilty to the Suffolk County charge on February 22, 1977. At some time after being indicted, Daniel jumped bail; his current whereabouts are unknown. The foregoing are not the first criminal proceedings in which petitioner has been involved. During 1972, while he was employed as vice president and treasurer of the Bay State Savings and Loan Association of Brookline, Massachusetts, petitioner was indicted by a Federal Grand Jury and charged with embezzling $425,099.74 from his employer.Petitioner pleaded guilty to that charge. Petitioner, as an accountant, was aware that stolen funds are income for Federal tax purposes; however, no income from stolen funds is shown on petitioner's return. Respondent determined that petitioner realized income in the amount of $136,920 from the embezzlement of the Subaru funds determined as follows: Total amount embezzled
$200,000
Amount recovered
63,080
Unreported income
$136,920
*260 Respondent also determined that part of petitioner's underpayment for 1976 was due to fraud. Accordingly, respondent imposed the 50-percent addition to tax provided for in section 6653(b). ULTIMATE FINDINGS OF FACT Petitioner understated his taxable income for the year 1976 by failing to report income from funds embezzled from his employer in the amount of $136,920.
A part of the underpayment of tax required to be shown on petitioner's 1976 Federal income tax return is due to fraud. OPINION 1. The Deficiency
The first issue for decision is to determine whether petitioner received unreported taxable income in the amount of $136,920, the net proceeds of funds embezzled from his employer. Section 61(a) defines the term "gross income" to include "income from whatever source derived." This statutory language has been held to encompass "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Glenshaw Glass v. Commissioner,348 U.S. 426, 431 (1955). Pursuant to this rationale, it has long been settled that illegal gains *261 from embezzlement constitute reportable gross income to the embezzler for the year in which the embezzled funds are misappropriated. James v. United States,366 U.S. 213, 219 (1961). Relying on these principles, respondent has determined that petitioner realized taxable income resulting from his embezzlement of funds from his employer. At trial, petitioner conceded that stolen funds do constitute reportable income for Federal income tax purposes. Petitioner contends, rather, that it was not he, but Daniel, who actually embezzled the funds and received the embezzlement proceeds. Petitioner flatly denies having received any of the embezzlement proceeds. We are thus faced with deciding the factual question of whether or not petitioner actually embezzled the funds and received the proceeds. At the outset, we note that, contrary to petitioner's unsupported position on brief, petitioner, not respondent, bears the burden of proving that respondent's determination as to the underlying deficiency is erroneous. Welch v. Helvering,290 U.S. 111, 115 (1933); *262 Rule 142(a) We hold that petitioner has failed to meet his burden. The only evidence presented by petitioner to support his position is his own uncorroborated testimony in which he simply denied any involvement in embezzling the funds and attempted to establish that Daniel carried out the entire scheme and took all of the proceeds for himself. Given the facts of record, we are not persuaded by petitioner's testimony. It was petitioner, not Daniel, who, as Subaru's comptroller had lawful access to the Subaru books and the blank checks for the Subaru account. The parties stipulated that Daniel did not have lawful access to the Subaru checks.Thus, petitioner, not Daniel, was in the position to forge the checks and conceal the embezzlement by misaddition on Subaru's books. Further support for the conclusion that petitioner and not Daniel forged the checks and embezzled the money is found in the following facts. Forged Subaru checks totaling $95,000 were deposited into the Hancock Bank account opened by petitioner in the name of New England Foreign Auto Parts using his own name and social security number. All checks drawn on that account were signed by petitioner himself. In *263 opening the account, petitioner used a false explanation for the account's purpose. Similarly, forged checks totaling $50,000 were deposited into the Boston Safe Deposit and Trust account opened by petitioner in the name of New England Realty Company using the fictitious name "Joseph Hogan." Although petitioner denied opening this account, the facts clearly indicate that petitioner opened it, given the similarity between his own signature and that of "Joseph Hogan," [2] the similarity between his social security number and the account's tax identification number, and the fact that petitioner used $20,000 from this account to purchase Federal Treasury Notes. In addition, petitioner directly received at least $17,500 from the $55,000 in forged checks deposited into the account opened by Daniel using the fictitious name "Daniel Flynn." Although Daniel may have deposited the checks into the account, based on our conclusion that petitioner forged the checks, we find that petitioner, as the embezzler of the funds, *264 had initial "dominion and control" over them. Helvering v. Horst,311 U.S. 112, 118 (1940); Bailey v. Commissioner,52 T.C. 115 (1969), affd. 420 F.2d 777 (5th Cir. 1969); Geiger's Estate v. Commissioner,352 F.2d 221 (8th Cir. 1965), affg. a Memorandum Opinion of this Court. Petitioner himself admitted forging the Subaru checks during the State criminal proceedings and his pleas of guilty to the criminal charges must be considered as his admission that he embezzled the funds in question. Petitioner's objection to our consideration of his guilty pleas and conviction for uttering and publishing forged checks and larceny in the State criminal proceedings has no merit. It is a well established principle of evidence that a judgment of conviction in a criminal prosecution is admissible in evidence in a subsequent civil action which is based on the act for which the conviction was rendered. Rule 803(22) of the Federal Rules of Evidence. Further, petitioner's guilty plea in the criminal proceedings is a confession of truth to the charges and is admissible in this civil action as his admission that he in fact forged *265 the checks and embezzled the funds in question. Fed. R. Evid. 801(d)(2). Petitioner has failed to prove that Daniel received any of the embezzled funds. We recognize the possibility that Daniel may have shared in the ill-gotten gains; but petitioner clearly received some of the proceeds. By taking the position that he received none of them, however, petitioner foreclosed the possibility of proving that Daniel shared the embezzlement proceeds with him. While it is true that Daniel opened one of the three accounts into which the embezzled funds were initially deposited, there is no evidence of record other than what we consider to be petitioner's self-serving testimony to support a finding that Daniel ever had actual "dominion and control" over any of the embezzled funds. Petitioner asks us to find in his favor based solely on his own testimony. We cannot do so because we find petitioner's testimony to be inconsistent with the facts, thus wholly lacking in credibility. At trial he denied forging the checks, but he admitted doing so in the State criminal proceedings; he did not recall signing the signature card at the Hancock Bank, but a bank official testified that he witnessed *266 petitioner sign the card; he denied participation in the embezzlement scheme, but he used both a fictitious name and a fictitious story in opening two of the accounts; he denied receiving any of the stolen funds, but he admitted endorsing some of the forged checks and his signature appears on many of the checks which were deposited into and drawn from the various bank accounts which were opened; he contends that Daniel took the funds, but when initially confronted with the theft, petitioner made no mention of Daniel. Petitioner's credibility is further undermined by the fact that in 1972 while employed as vice president and treasurer of a bank, he was convicted of embezzling approximately $425,100 from his employer. Petitioner takes exception to our consideration of this prior conviction; however it is clear that we may consider it in order to make a determination regarding petitioner's credibility. Fed. R. Evid. 609. The probative value of petitioner's prior conviction is most relevant in view of the fact that the crime for which he was convicted, embezzlement, involves dishonesty and moral turpitude, thus directly reflecting on petitioner's credibility. We hold, therefore, *267 that petitioner, as determined by respondent, did in fact receive as funds embezzled from his employer the entire amount of $136,920 and understated his taxable income by that amount. 2. The Addition to Tax
The second issue for decision is whether petitioner is liable for the addition to tax under section 6653(b) for fraud. Section 6653(b) provides that if any part of an underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. Contrary to petitioner's position that a "bad or evil" motive must be shown in order to demonstrate fraud, the authorities define fraud, within the meaning of section 6653(b), as an intentional wrongdoing with the specific intent to evade a tax believed to be owed. Powell v. Grandquist,252 F.2d 56, 60 (9th Cir. 1958); Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941), revd. and remanded 40 B.T.A. 424 (1939). The required intent may be shown by circumstantial evidence and reasonable inferences drawn *268 from the facts. Stone v. Commissioner,56 T.C. 213, 224 (1971); Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. 578 F.2d 1383 (8th Cir. 1978). Whether fraud exists with respect to an underpayment of tax is, in the final analysis, a question of fact, and the burden is on respondent to prove fraud by clear and convincing evidence. Sec. 7454(a); Stone v. Commissioner,supra at 220; Rule 142(b). The answer to the question of the existence of fraud must be determined from an examination of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970). After careful consideration of all of the facts, specifically the affirmative evidence introduced by respondent and our findings regarding petitioner's testimony at trial, we conclude that respondent has proven by clear and convincing evidence that a part of petitioner's underpayment of income tax for 1976 was due to fraud. The record demonstrates that petitioner is a highly intelligent, well-educated accountant who conceded at trial that he is aware that stolen funds are considered income for Federal income tax purposes. The *269 embezzlement scheme which he carried out was sophisticated and well planned, clearly the work of someone who knew what he was doing. As we have found, petitioner received substantial income from stolen funds. Indeed he has conceded that he was aware that such funds are considered income for Federal income tax purposes. We find, therefore, that his failure to report such income is due to more than just mere oversight or negligence. By not disclosing this income he must have intended, at least in part, to evade taxes he believed to be owed. One of petitioner's explanations for not reporting such income is worthy of note: "[I]f I had reported on my 1976 tax return that I earned or I embezzled or whatever $200,000, than [sic] that would have been self-incriminating for my trial * * *." [3] This statement clearly indicates petitioner's knowledge that such funds must be reported. Further, given the fact that one of his guilty pleas and his stated intention to make the other occurred before he filed his 1976 return, we draw the logical inference that it was and continued to be, up to the time of trial, petitioner's specific intent to evade tax. *270 We acknowledge that receipt of income from illegal activity and failure to report that income alone do not themselves establish fraud. They do, however, indicate a general disposition to defraud. In McGee v. Commissioner,61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975), we held: While evidence that a taxpayer was attempting to defraud another in a business transaction may not be direct evidence of fraud with intent to evade tax, see Toledano v. Commissioner,363 F.2d 243, 247 (C.A. 5, 1966), the Court is entitled to consider such evidence along with other evidence in determining the intent of the taxpayer in doing certain acts, because it is a fair inference that a man who will misappropriate another's funds to his own use through misrepresentation and concealment will not hesitate to misrepresent and conceal his receipt of those same funds from the Government with intent to evade tax.Rogers v. Commissioner,111 F.2d 987 *271 (C.A. 6, 1940).The legal relevancy of such evidence is based upon logical principles which go to negate innocent intent. United States v. Bridell,180 F. Supp. 268 (N.D. Ill. 1960); Pappas v. United States,216 F. 2d 515 (10th Cir. 1954). [Emphasis added.] Thus, we draw the inference here that petitioner, who embezzled his employer's funds through misrepresentation and concealment, has not hesitated to misrepresent and conceal his receipt of those same funds from the Government with the intent to evade tax. The evidence of record clearly illustrates that petitioner's entire course of conduct in carrying out the embezzlement scheme was fraught with deceit. He forged checks; he used a fictitious name; he opened a bank account under false pretenses. He attempted to conceal his wrongdoing not only from his employer, but the Internal Revenue Service as well by not reporting the embezzled funds as income. Further, petitioner's testimony at trial was also fraught with such inconsistency as to justify our conclusion that petitioner wholly lacks credibility and is fully capable of attempted tax evasion. Thus, the only reasonable conclusion we can *272 reach based on the foregoing is that respondent has sustained his burden of proving that part of petitioner's understatement of his 1976 tax liability is due to fraud and that petitioner is liable for the addition to tax under section 6653(b). [4]
Decision will be entered for the respondent.
Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue. All "Rules" references are to the Tax Court Rules of Practice and Procedure unless otherwise noted.↩
2. A bank official with years of experience in verifying signatures on checks testified that, in his opinion, the signature, "Joseph Hogan," was that of petitioner.↩
3. In Sullivan v. United States,274 U.S. 259 (1927), the Supreme Court held that the Fifth Amendment↩ self-incrimination provisions do not permit a taxpayer to fail to report income even though it is derived from illegal activities.
4. For the sake of completeness, the record does not show when petitioner filed his 1976 return, but it is dated February 8, 1977. Respondent concedes that it was timely filed. The notice of deficiency, mailed May 16, 1980, was timely only if one of the exceptions to the 3-year limitations provisions of sec. 6501 applies. Although petitioner did not plead the statute of limitations, we note that because we have found that at least part of the underpayment of tax was due to fraud within the meaning of sec. 6653(b), the fraudulent return exception provided in sec. 6501(c)(1) applies. Stone v. Commissioner,56 T.C. 213, 227-228↩ (1971).