In re Alberto **DUQUE** a/k/a Alberto Duque Rodriguez, Debtor.

**Bankruptcy No. 83–00903–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Jan. 11, 1988.

Alvarez L. Lecesne, Tax Div., Dept. of Justice, Washington, D.C.

IRS Dist. Counsel, Sergio Pages, Miami, Fla.

U.S. Atty. Leon B. Kellner, S.D. Florida, Civ. Div., Miami, Fla.

I.R.S., Insolvency Unit, Stop 5730, Ft. Lauderdale, Fla.

John Paul Murphy, Craftsbury Common, Vt., Trustee.

Blackwell, Walker, Fascell & Hoehl, Patrick S. Scott, Thomas F. Finan, Miami, Fla., for Trustee.

Robert A. Schatzman, Schantz, Schatzman, Aaronson & Berlin, P.A., Miami, Fla., Haddad, Josephs & Jack, Denise V. Powers, Coral Gables, Fla., for City Nat. Bank.

Ronald G. Neiwirth, Miami, Fla., for Paul C. Nordberg/Creditor–Trustee for Chase & Sanborn Corp. f/k/a General Coffee Corp.

Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, Miami, Fla., for Alberto Duque.

## ORDER DENYING TRUSTEE'S OBJECTION TO CLAIM NO. 39 (IRS)

THOMAS C. BRITTON, Chief Judge.

The trustee's objection to Claim No. 39 filed by the IRS in the amount of $7,068,-093 (as most recently amended in April 1986) was heard November 30, 1987. For the reasons which follow, the objection is denied.

This unsecured, priority claim is for an adjusted 1982 income tax of $4.3 million under 11 U.S.C. § 507(a)(7). The claim also includes prepetition interest and penalties of, respectively, $1.1 million and $1.6 million.

The income tax claim for 1982 was primarily assessed on the debtor's misapplication of $8 million of bank funds.[1] That assessment is based, in turn, on the debtor's criminal conviction in *United States v. Alberto Duque*, No. 84–777–CR–JCP (S.D. Fla.), *aff'd sub nom. United States v. Castro*, 829 F.2d 1038 (11th Cir.1987).

The debtor was convicted under 18 U.S.C. § 656 as the:

"Chairman of the Board and majority shareholder of City National Bank Corporation, the holding company for City National Bank of Miami"

of:

"knowingly, willfully and with intent to injure and defraud City National Bank of Miami ... willfully misapply[ing] $8–million of the bank's money by using an $8–million certificate of deposit purchased by the bank to collateralize an $8–million loan to Domino Investments, Ltd. from Banco Exterior, S.A. (Panama)." Indictment, Count 95.

The trustee's objection (C.P. No. 336) contains two grounds: that the claim is not "properly documented", and that:

"[t]he claim filed is improperly asserted against ALBERTO DUQUE, because the income alleged as the basis for the claim was not income of ALBERTO DUQUE."

The first ground is without merit and appears to have been abandoned. The trustee argues only that the portion of the tax assessed against the debtor for the $8 million income is unwarranted. The amount of the claim has not been questioned in any other respect.

The sole issue, therefore, is whether the debtor had taxable income in 1982 from his misapplication of the $8 million that belonged to City National Bank.

*Sequence of Events*

The evidence is not in conflict. The relevant series of events began in March 1982 when City National Bank (controlled by the debtor through his ownership of 50.1% of the stock of the Bank's holding company) purchased an $8 million certificate of deposit from Banco Exterior, S.A. (an unrelated Panamanian bank).

During 1982, the certificate of deposit was pledged at the debtor's direction, but without City National's authorization, as collateral for an $8 million loan from Banco

---

1. The rest of the tax (3.8%) was based upon a bank dividend of $319,885 which the debtor had failed to report. This portion of the assessed tax is not challenged by the trustee.

Exterior to Domino Investments, Ltd. (an offshore holding company wholly owned by the debtor). City National derived no benefit from the pledge of its certificate.

Domino deposited the $8 million to the account of General Coffee Corporation (a domestic corporation wholly owned by Domino and, through Domino, by the debtor). The parties have stipulated that all of the funds were used by General Coffee to acquire the inventory, name and goodwill of the Chase & Sanborn Division of Standard Brands (an unrelated third party).

The loan from Banco Exterior to Domino was renewed several times, without any payment other than interest, until it became due in June 1983 after Domino's bankruptcy in May 1983. The pledged certificate of deposit was then applied by Banco Exterior in satisfaction of the Domino note.

City National has sued Banco Exterior in another court in an attempt to recover this money and, in a separate action, has recently obtained a judgment against General Coffee Corporation's liquidating trustee for $6,488,011 of that sum. *City National Bank of Miami v. General Coffee Corp.,* 828 F.2d 699 (11th Cir.1987).

The fact that City National, which up to now has borne the entire loss, will shortly recoup much of that loss is, I think, immaterial here. The issue is whether the debtor obtained an $8 million economic benefit in 1982, not whether he subsequently lost or retained that benefit. The trustee mentions this circumstance, but makes no point of it.

Some or all of the foregoing events were effected by Camilo Bautista, who was simultaneously an officer and director of both City National and Domino. It is undisputed, however, that he acted at the direction of the debtor, his employer and superior.

### Discussion

■ Because the evidence is not in conflict, I have disregarded the burden of proof. However, the Commissioner's determination that these funds have been appropriated for the debtor's personal use is presumptively correct. *Potito v. Commissioner,* 534 F.2d 49, 51 (5th Cir.1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 751 (1977). The burden is on the trustee to overcome the presumption. *Helvering v. Commissioner,* 293 U.S. 507, 515, 55 S.Ct. 287, 290–91, 79 L.Ed. 623 (1935).

■ It is, I believe, agreed by these parties that income will be attributed for tax purposes to the actual earner of the income, *Lucas v. Earl,* 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930), and that illegal income from any source is taxable to the individual who commits the crime which generates the income, in the year the individual received the economic value from his illegal act. *James v. United States,* 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

■ As stated in *United States v. Rochelle,* 384 F.2d 748, 751 (5th Cir.1967): "The Supreme Court, after many years of hesitation, has now firmly concluded that the economic benefit accruing to the taxpayer is the controlling factor in determining whether a gain is 'income'.... 'An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it.'" (citing *Rutkin v. United States* 343 U.S. 130 [72 S.Ct. 571, 96 L.Ed. 833]).

*Economic benefit.* The trustee argues that because the money unlawfully and fraudulently diverted by the debtor from City National wound up being used (at his direction) as a credit to his personal holding company, Domino, for its capital account in General Coffee, Domino's wholly-owned subsidiary, and was entirely spent by General Coffee for the bona fide purchase of corporate assets, the debtor derived no economic benefit from the money he stole. I disagree.

In *Bailey v. Commissioner,* 52 T.C. 115, 118–19 (1969), *aff'd,* 420 F.2d 777, 778 (5th Cir.1969), a bank employee embezzled money by crediting her brother's account with deposits he never made. While the employee never intended to spend the embezzled

funds for her own personal needs, the embezzled funds were held to be her taxable income. The Tax Court said:

> "As the creator of the income, Barbara chose to place it at Melton's disposal ... [as] gifts by her of funds representing money she embezzled from the bank. ... In all the transactions, Barbara exercised complete dominion and control over the embezzled funds. She beneficially enjoyed this income and, in effect, treated it as her own when she chose to place it at her brother's disposal. Barbara's exercise of control over these funds is sufficient for them to constitute income to her."

The Court of Appeals affirmed "for the reasons given by the Tax Court". Both *Rochelle* and *Bailey* are binding precedent in this Circuit. *Dills v. City of Marietta, Ga.*, 674 F.2d 1377, 1380 (11th Cir.1982).

Duque was in a position to and did exercise complete dominion and control over the $8 million he unlawfully diverted from City National. He chose to direct the misapplication of those funds to obtain a loan for Domino [2] and to satisfy Domino's debt of $8 million to Banco Exterior for that loan without any payment from Domino. The diversion of those funds was a gift to Domino without any recognition by Duque of any obligation to any party.

The debtor beneficially enjoyed the $8 million, and treated it as his own when he chose to place it at the disposal of two companies, Domino and General Coffee, each of which was wholly owned and controlled by him. Though the transaction was less direct than the one in *Bailey*, I believe it presents an even clearer case of economic benefit to the taxpayer.

In the words of Justice Holmes:

> "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." *Corliss v. Bowers*, 281 U.S. 376, 378 [50 S.Ct. 336, 337, 74 L.Ed. 916] (1930).

The trustee has argued that *Bailey* is distinguishable because Bailey was guilty of embezzlement and this debtor was convicted of misapplication. The two crimes are different but the difference is immaterial here. As stated in *United States v. Gallagher*, 576 F.2d 1028, 1044 (3rd Cir. 1978):

> "Willful misapplication [under 18 U.S.C. § 656] we find to be a *conversion* by a bank employee even though he does not take the money for himself. It is possible that the statutory provision is an attempt to enlarge the common law definition of embezzlement." (Emphasis added).

In *Rochelle, supra* at 751, in which the unlawfully gained money was loaned to the taxpayer, the court said:

> "We perceive no qualitative difference with regard to taxability between the gains of an extortionist, held taxable in *Rutkin*, those of an embezzler, held taxable in *James*, and those derived by a confidence man like Addison. The extortionist uses coercion, the embezzler stealth, and the confidence man false promises. All are legally under an obligation to repay their ill-gotten gains. All are guilty of crimes under the laws of the various states. As the Court said in *Rutkin*:
>
> > 'An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it.'"

■ *Inter–company loans.* The trustee's remaining argument is that:

> "Considering the fact that the loan proceeds flowed from Exterior to GCC (presumably at Domino's direction), and that Duque controlled CNB, Domino and GCC, the totality of the transactions became in substance an *inter-company loan* on the date of the pledge (June 17, 1982), since CNB, not Exterior, bore the end risk of loss." Trustee's Memorandum (C.P. No. 362).

**2.** It is a reasonable and, I believe, an inescapable inference from this record that Domino

could not obtain the loan from Banco Exterior without the pledged collateral.

**614**

The debtor's criminal conviction determined that the use of City National's money was unauthorized by City National. It was *not* a loan. Had it been an inter-company loan, the debtor would not have been convicted. It was an unlawful conversion of City National's money by Duque from a bank in which he had a 50.1% equity interest to a personal holding company *entirely* owned by him. For that reason, he is now in jail.