T.C. Memo. 2011-190

UNITED STATES TAX COURT

WILLIAM BRADLEY WOOD AND NANCY LYNN WOOD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17822-09.                    Filed August 10, 2011.

<u>Frederick G. Irtz II</u>, for petitioners.[1]

<u>Archana Ravindranath</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  On April 30, 2009, respondent issued to Mr.
and Mrs. Wood (the Woods) a notice of deficiency for the taxable
years 2001, 2002, and 2003 determining income tax deficiencies of

---

[1]<u>Frederick G. Irtz II</u> (Mr. Irtz) represented petitioners at
the trial of this case.  On June 27, 2011, petitioners filed a
motion to withdraw Mr. Irtz as their counsel, which the Court
granted on July 11, 2011.

$68,029, $78,941, and $6,661, respectively.  The deficiency notice also determined accuracy-related penalties under section 6662(a)[2] in the respective amounts of $13,605.80, $15,788.20, and $1,332.20 for the years at issue.

The Woods seek review of respondent's determinations and claim they are liable for only parts of the deficiencies and penalties.  As discussed below, we sustain respondent's determinations of the deficiencies and the accuracy-related penalties.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The Woods resided in Kentucky at the time they filed their petition.

Mr. Wood served as general manager of Helton Overhead Door Sales Co. (Helton), a garage door sales company, from 1990 until 2003.  As general manager, he was authorized to sign checks on behalf of Helton in order to pay vendors and creditors.  During the taxable years at issue the Woods owned and operated Woodie's Market, Inc. (Woodie's), an incorporated grocery store business that is a separate taxpayer.  As president of Woodie's, Mr. Wood oversaw day-to-day affairs.  Mrs. Wood served as Woodie's treasurer.  Mr. Wood misappropriated funds from Helton beginning

---

[2]All section references are to the Internal Revenue Code, as amended.

in 1994 and ending in 2003, when his actions were discovered by one of the company's owners, Harry Helton.  In 2005 Mr. Wood pleaded guilty in the Fayette Circuit Court in the Commonwealth of Kentucky to charges of unlawful taking of over $300 and was sentenced to 3 years in the State penitentiary and ordered to pay $200,000 to Raynor Door Authority, Inc., the assignee of Helton's business and assets.  During 2001, 2002, and 2003, Mr. Wood misappropriated funds from Helton of $200,894.87, $234,480.21, and $59,686.02, respectively.  Mr. Wood used the misappropriated money to cover personal expenses, pay credit card bills, and support Woodie's.  The Woods were unable to produce at trial any books or records of Woodie's' finances.  The Woods failed to report any of the misappropriated funds on their joint income tax returns for tax years 2001, 2002, and 2003.

The Woods have conceded taxes and accuracy-related penalties are owed on the funds used for personal expenses and credit card bills.  However, the disposition of the money put directly into the Woodie's account remains in dispute.

OPINION

Section 61(a) provides:  "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived".  This broad definition of "gross income" includes income derived through illicit means including embezzlement, regardless of how the money is used and although the embezzler

may be required to repay the money in a later year.  See <u>James v.
United States</u>, 366 U.S. 213, 219-220 (1961).

The parties dispute the proper treatment of the money Mr.
Wood misappropriated from Helton and used in the Woodie's
business.  The Woods claim Mr. Wood acted as the president of
Woodie's, not in an individual capacity, when he wrote checks
from Helton to Woodie's and thus the money should be counted as
income to Woodie's, not to the Woods.  Respondent argues that Mr.
Wood, as an employee of Helton, misappropriated funds and
determined whether to use them for personal expenses, credit card
bills, or to support Woodie's.  Therefore, respondent asserts
that how the misappropriated funds were put to use is of no
consequence to this matter because Mr. Wood's control over the
funds requires inclusion in the Woods' income.  We agree with
respondent.  The Woods are confusing how the money was used with
how the money was acquired.  Mr. Wood misused his position at
Helton to misappropriate the funds and used the money in whatever
manner he chose.  Because he had dominion over the
misappropriated funds from Helton, all of the misappropriated
funds became part of the Woods' gross income.

The Woods also contend this is a novel issue because the
disputed funds were included in Woodie's' income.  This argument
misses the essential issue, and the Woods have not provided any
evidence to support this argument on the facts.  The Woods

further claim that if the misappropriated funds are not income to Woodie's, they are contributions to capital and should not have been included in Woodie's' taxes.  Using the stolen funds as a contribution to capital does not relieve the Woods of their responsibility to report the funds as income, and Woodie's is not a party to this case.

A similar situation arose in Bailey v. Commissioner, 52 T.C. 115 (1969), affd. 420 F.2d 777 (5th Cir. 1969), in which the taxpayer misappropriated bank funds and had them deposited directly into her brother's account.  In Bailey, we ruled that the "complete dominion and control over the embezzled funds" exercised by the taxpayer was sufficient to cause the funds to be income to the taxpayer.  Id. at 119.  Mr. Wood disposed of the funds in a manner of his choosing.  He derived benefit from allocating the money in this way, in essence realizing and accepting ownership of the funds.  See Helvering v. Horst, 311 U.S. 112 (1940).  Mr. Wood was "force and fulcrum" behind the misappropriations, and he received them as income.  See Estate of Geiger v. Commissioner, 352 F.2d 221 (8th Cir. 1965), affg. T.C. Memo. 1964-153.

Concerning the accuracy-related penalties, the Woods do not offer any reasonable cause or substantial authority for their failure to report the misappropriated income, and the understatements of income tax exceed both 10 percent of the

amounts required to be shown on the returns and $5,000. Therefore, the penalties under section 6662(b)(2) are sustained.

Accordingly, we conclude the Woods are liable for the determined deficiencies and accuracy-related penalties.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.