ROBERT N. PARKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parker v. Commissioner
Docket No. 14082-83.
United States Tax Court
T.C. Memo 1985-263; 1985 Tax Ct. Memo LEXIS 367; 50 T.C.M. (CCH) 14; T.C.M. (RIA) 85263; June 3, 1985. *367 Petitioner was convicted in a State criminal trial of 157 counts of theft of more than $300, resulting from petitioner's embezzlement of more than $530,000. Held: (1) Petitioner's conviction does not collaterally estop petitioner from denying that the embezzled funds are includible in his gross income under section 61(a), I.R.C. 1954, on the ground that he acted under the control of various third parties and so should be treated as a conduit. (2) Respondent has failed to show that petitioner's "conduit" theory does not raise a genuine dispute as to any material fact; respondent's motion for partial summary judgment is denied. John J. Vassen and Richard L. Meives, for the petitioner. Frank Agostino and Michael W. Bitner, for the respondent. CHABOT
MEMORANDUM OPINION CHABOT, Judge: This case is before the Court on respondent's motion for partial summary judgment on the issue of whether petitioner must include in his gross income for the years 1979, 1980, and 1981, the amounts of $93,002.79, $302,366.66, and $136,303.89, respectively, not previously reported by him. [1] *368 Respondent determined deficiencies in Federal individual income tax and additions to tax under section 6653(b) [2] (fraud) against petitioner as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)
1977
$11,203.18
$5,601.59
1978
7,424.89
3,825.45
1979
58,985.92
29,492.96
1980
188,899.59
94,449.80
1981
80,537.12
40,268.56
After concessions by petitioner, the issues for decisions are as follows: (1) Whether petitioner is collaterally estopped by the judgment in People v. Parker, No. 81- CF-985 (Cir. Ct. 6th Jud. Cir., Champaign County, Ill., June 1, 1982), affd. 113 Ill.App.3d 321, 447 N.E.2d 457 (1983), from asserting that petitioner's acts in unlawfully obtaining control over funds belonging to the University of Illinois Foundation and U.D. Corporation were the result of control on the part of third parties; and (2) If petitioner is not so estopped, whether petitioner's assertion that he acted as *369 a mere conduit for the funds raises a genuine issue as to any material fact relating to issue of whether petitioner must include the funds in his gross income. Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioner resided in Champaign, Illinois. In People v. Parker,supra (hereinafter sometimes referred to as "the criminal case"), petitioner was charged in a grand jury indictment with 157 counts of theft of more than $300. Each court alleged that petitioner had knowingly obtained, by deception, control over property of the University of Illinois Foundation (hereinafter sometimes referred to as "Foundation") and the U.D. Corporation (hereinafter sometimes referred to as "Corporation"), being an amount of money exceeding $300, intending to deprive Foundation and Corporation permanently of the use and benefit of the money, in violation of Ill. Rev. Stat. 1979, ch. 38, sec. 16-1, as amended. On April 26, 1982, after a trial on the merits, a jury rendered a verdict finding petitioner guilty as charged in all 157 counts. On June 1, 1982, the Circuit Court *370 of the Sixth Judicial Circuit of Illinois entered its judgment of guilty as charged in all 157 counts, and sentenced petitioner to a 5-year prison term and a $10,000 fine. This judgment and sentence was affirmed on appeal by the Appellate Court of Illinois, Fourth District, on March 16, 1983, and has now become final. At the trial of the criminal case, each of the 157 counts was supported by a check (hereinafter sometimes referred to collectively as "the checks") on the account of Corporation, showing petitioner's name and title ("Treasurer") as the drawer, for an amount of more than $300. Counts I through XLIII were supported by 43 checks dated in 1979 and totalling $93,002.79. Counts XLIV through CXXV were supported by 82 checks dated in 1980 and totalling $302,366.66. Counts CXXVI through CLVII were supported by 32 checks dated in 1981 and totalling $136,303.89. [St.7] The 157 checks total $531,673.34 (hereinafter sometimes referred to as "the embezzled funds"). The checks reflect the payees, and amounts shown in table 1: Table 1
Payee
No. of Checks
Total Amount
Petitioner
23
$ 17,337.50
Sherry Bates
1
2,000.00
LaRene Baver
1
700.00
Cat-Walk, Inc.
3
15,050.00
Club Taray
13
90,491.40
Denise Fredericksen
2
7,500.00
Gisela Javanov
5
16,000.00
Nada Lauts
17
52,410.69
Angelina O'Malley
11
40,000.00
Noelle Poston
3
1,500.00
Cathy Robinett [1]
40
190,500.00
Loretta Schwartz
1
2,000.00
Robin Stearney
20
74,500.00
Karolyn Kay Summers
1
5,000.00
Debra Lee Wajdo
1
2,700.00
Miscellaneous
15
13,983.75
Totals
157
$531,673.34
*371 During at least from August 1979 through August 1980, Ronald Martin was the manager of the Club Taray. On at least these 157 occasions, petitioner unlawfully obtained by deception control over property of Foundation and Corporation, with the intent of permanently depriving Foundation and Corporation of the use and benefit of this property. Petitioner did not report the embezzled funds as gross income on his Federal income tax returns for 1979, 1980, and 1981. Respondent has moved for partial summary judgment under Rule 121[3], contending that the amounts of the embezzled funds are includible in petitioner's gross income under section 61(a)[4] *372 (relying on James v. United States,366 U.S. 213 (1961)), in the amounts of $93,002.79, $302,366.66, and $136,303.89 for 1979, 1980, and 1981, respectively. (See n.1, supra.) Petitioner asserts that the embezzled funds are not includible in his gross income because petitioner "served solely as a 'conduit' for transmittal of these funds from the University of Illinois to various third party beneficiaries and payees of such amounts". Specifically, petitioner contends that (1) he acted under the control of third parties [5]; (2) the control "was induced through psychological means and involved Petitioner's perception whether reasonable or not and not necessarily including physical threats"; and (3) as a result of the third parties' control, petitioner was merely a conduit or agent for these third parties. With respect to petitioner's conduit theory, respondent contends that (1) petitioner's claim that he acted under the control of their parties is synonymous with the defenses of compulsion and necessity that petitioner relied on in the criminal case, and consequently, petitioner is collaterally estopped by the judgment *373 in the criminal case from asserting that he acted under the control of third parties; and (2) even if petitioner is not so estopped, his "conduit" theory does not raise a genuine issue as to any material fact. Petitioner contends that (1) collateral estoppel does not apply because petitioner's claim that he acted under the control of third parties was not litigated in the criminal case; and (2) partial summary judgment is not appropriate because his "conduit" theory raises a genuine issue of material fact. We agree with petitioner. A. Collateral Estoppel
The doctrine of collateral estoppel precludes relitigation of any issue of fact or law that is actually litigated and necessarily determined by a valid and final judgment. [6]Montana v. United States,440 U.S. 147, 153 (1979); Crowder v. Lash,687 F.2d 996, 1009 (CA7 1982); Wright v. Commissioner,84 T.C. 636, 639 (1985). However, for collateral estoppel to apply, the matters argued in the second proceeding must have been actually "presented and determined in the first suit" and they must be "identical in all respects with that decided in the first proceeding." "[T]he controlling facts and applicable legal rules [must] remain unchanged." *374 Commissioner v. Sunnen,333 U.S. 591, 598, 599-600 (1948); see Crowder v. Lash,687 F.2d at 1010. In the criminal case, petitioner raised the defenses of compulsion *375 and necessity. The trial judge ruled that there was insufficient evidence to instruct the jury as to these defenses. On appeal, petitioner contended that it was in error to so refuse to instruct the jury. However, the Appellate Court upheld the trial judge's rulings, and affirmed the conviction. People v. Parker, 447 N.E. 2d at 462. The defenses of compulsion and necessity are carefully defined in the Illinois Criminal Code of 1961; see Ill. Ann. Stat., ch. 38, sec. 7-11 [7] *376 (compulsion) and sec. 7-13 [8] (necessity) (Smith-Hurd). A careful reading of these provisions makes it clear that these defenses are fundamentally different from petitioner's present claim that he acted under the psychological control of third parties. The compulsion defense "is available when (1) an offense is committed under the threat of death or great bodily harm, and (2) the person committing the offense reasonably believes that death will result if he fails to perform the act constituting the offense." People v. Parker, 447 N.E.2d at 462. In the instant case, petitioner's control theory does not rest on an assertion that petitioner was threatened with physical harm of any magnitude. Rather, it apparently rests on psychological intimidation. Further, petitioner acknowledges that his beliefs may not have been reasonable. See People v. Ricker,262 N.E.2d 456, 460 (Ill. 1970), which holds that threats of (1) losing one's job and (2) being indicted were not "compulsion" of the type described in the statute. The necessity defense *377 is available only if the person raising the defense (1) is "without blame in occasioning or developing the situation, and (2) reasonably . . . believed that his conduct was necessary to avoid a greater public or private injury than otherwise might have resulted from his conduct." People v. Parker, 447 N.E.2d at 462. Here, petitioner's control theory does not rest on an assertion that petitioner was without blame in initially becoming involved with the third parties he claims came to control his actions. Nor does petitioner assert that his was the lesser evil; he merely asserts that his evil was conducted in consort with others. Finally, we again note that petitioner does not claim that his beliefs were necessarily reasonable. We conclude that the compulsion and necessity defenses raised in the criminal case are not identical to petitioner's contention that he acted under the control of third parties. Since the issue on which collateral estoppel is asserted by respondent is not identical to that determined in the criminal case, we hold that collateral estoppel does not apply on this issue, and petitioner is not forbidden to assert that he acted under the control of third parties. B. *378 Genuine Issue as to Material Fact
Summary judgment is a device used to expedite litigation; it is intended to avoid unnecessary and expensive trials. However, it is not a substitute for trial; it should not be used to resolve disputes over factual issues. Cox v. American Fidelity & Casualty Co.,249 F.2d 616, 618 (CA9 1957); Espinoza v. Commissioner,78 T.C. 412, 417 (1982). A motion for summary judgment is to be granted if it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). Since the effect of granting a motion for summary judgment is to decide the case against a party without allowing that party an opportunity for a trial, the motion should be "cautiously invoked" and granted only after a careful consideration of the case. Associated Press v. United States,326 U.S. 1, 6 (1945); Cox v. American Fidelity & Casualty Co.,supra;Espinoza v. Commissioner,78 T.C. at 417. Respondent, as the moving party, has the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the material lodged must be viewed in the light most favorable to the opposing party; that *379 is, all doubts as to the existence of an issue of material fact must be resolved against the movant. E.g., Adickes v. Kress & Co.,398 U.S. 144, 157 (1970); Dreher v. Sielaff,636 F.2d 1141, 1143 n.4 (CA7 1980); Espinoza v. Commissioner,78 T.C. at 417. It is clear that embezzled funds constitute gross income to an embezzler in the year of embezzlement. James v. United States,supra;Rappaport v. United States,583 F.2d 298, 302 (CA7 1978). This statement, however, does not end our analysis of the instant case, as respondent would have it. James merely concludes that embezzled funds are a type of gross income as defined in section 61(a). Even in computing an embezzler's income, we must not ignore other principles that might lead to a reduction of the embezzler's income, such as the "conduit" or agency theory espoused by petitioner. In Diamond v. Commissioner,56 T.C. 530 (1971), affd. 492 F.2d 286 (CA7 1974), we stated (56 T.C. at 541): We accept as sound law the rule that a taxpayer need not treat as income moneys which he did not receive under a claim of right, which were not his to keep, and which he was required to transmit to someone else as a mere conduit. See Stevens Brothers & Miller-Hutchinson Co. v. Commissioner,24 T.C. 953 (1955); *380 and Mill v. Commissioner,5 T.C. 691 (1945), for cases in which a "conduit" theory was applied in concluding that a taxpayer was not taxable on income turned over to a third party pursuant to a pre-existing agreement. See also Mais v. Commissioner,51 T.C. 494, 495 (1968), in which the taxpayer, "acting in concert with others, embezzled certain securities". In Mais, respondent determined that petitioner was taxable only with respect to his share of the proceeds received from the sale of the embezzled stock, not for the full amount of the proceeds. Cf. Geiger's Estate v. Commissioner,352 F.2d 221 (CA8 1965), affg. a Memorandum Opinion of this Court [9]; Bailey v. Commissioner,52 T.C. 115 (1969), affd. 420 F.2d 777 (CA5 1969). Indeed, the applicability of a "conduit" theory to embezzled funds may have been recognized by the Supreme Court in James, when it stated (366 U.S. at 219): When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed *381 that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North American Oil v. Burnet, [286 U.S. 417, 424 (1932)] [Emphasis added] Consequently, if petitioner can establish that he did not receive some or all of the embezzled funds "without restriction as to their disposition", because he acted in consort with, and under the control of, third parties, and he acted merely as a conduit or agent in passing the embezzled funds to the third parties pursuant to a prearranged plan or agreement, then he may prevail, in whole or in part, in the instant case. We conclude that respondent has failed to meet his burden of proof with regard to the dispute over the inclusion of the embezzled funds in petitioner's gross income. Whether the embezzled funds are not includible in petitioner's income under his "conduit" theory is a factual question which involves the intent of petitioner and the third parties (see n.5, supra). Ordinarily, summary judgment should not be granted in a case in which intent is an issue. See Munson v. Friske,754 F.2d 683, 690 (CA7 1985); Wright v. Commissioner,84 T.C. at 644 (slip opin. pp. 14-15); Espinoza v. Commissioner,78 T.C. at 417; *382 Hoeme v. Commissioner,63 T.C. 18, 20 (1974). We see no reason not to follow this rule in the instant case. It is true that petitioner is not entitled to a trial on the possibility that an issue of material fact might turn up at the trial. First Nat. Bank v. Cities Service,391 U.S. 253, 289-290 (1968). But it is equally true that the fact it may be surmised that petitioner is unlikely to prevail at trial is not a sufficient basis for refusing him his day in court with respect to an issue which is not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try it. Harris v. Pate,440 F.2d 315 (CA7 1971). "In deciding whether there is an issue of material fact in a case, all doubts must be resolved against the party moving for a summary judgment." Cox v. American Fidelity & Casualty Co.,249 F.2d at 619. Respondent, as the moving party, has the burden of clearly establishing the lack of any triable issue of fact by a record that is adequate for decision of the legal question presented. See Dreher v. Sielaff,636 F.2d at 1143 n. 4; Rose v. Bridgeport Brass Company,487 F.2d 804, 808 (CA7 1973); Hoeme v. Commissioner,supra. We have concluded that respondent *383 has failed to meet this burden. [10] Consequently, respondent's motion for partial summary judgment will be denied. An appropriate order will be entered.
Footnotes
1. Respondent's motion asked the Court to rule as to the amounts of $92,314.13, $280,913.66, and $135,803.89 for 1979, 1980, and 1981, respectively. However, the parties have stipulated that the amounts set forth in the text, supra,↩ are the amounts to which respondent's motion applies.
2. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the years in issue.↩
1. Includes two checks for $10,000.00 each, which were payable to the Internal Revenue Service on Cathy Robinett's behalf.↩
3. Unless indicated otherwise, all rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. SEC. 61. GROSS INCOME DEFINED. (a) General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *
5. Petitioner contends that he acted under the control of the following individuals: Sherry Bates, LaRene Baver, Denise Fredericksen, Nada Lauts, Ronald Martin, Angelina O'Malley, Cathy Robinett, Robin Stearney, and Debra Lee Wajdo.↩
6. Traditionally, application of the doctrine of collateral estoppel was limited by the requirement of strict mutuality between the parties to the first and second proceedings. Parklane Hosiery Co. v. Shore,439 U.S. 322, 326 (1979); Jaggard v. Commissioner,76 T.C. 222, 224 (1981). However, the requirement of strict mutuality of the parties has been abandoned. See United States v. Mendoza,464 U.S. 154 (1984). The use of nonmutual collateral estoppel by the government against a private litigant was permitted by the Supreme Court in Parklane Hosiery Co. v. Shore,supra.See Baily v. United States,350 F. Supp. 1205 (E.D. Pa. 1972). The use of nonmutual collateral estoppel does not appear to be inappropriate in the instant case and petitioner does not suggest that any special circumstances exist which would render its use inappropriate or unfair. See Crowder v. Lash,687 F.2d 996, 1010-1011 (CA7 1982); see also Jack Faucett Associates v. American Tel. & Tel.,744 F.2d 118, 124-125↩ (CA DC 1984) and cases there collected.
7. § 7-11. Compulsion (a) A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct. (b) A married woman is not entitled, by reason of the presence of her husband, to any presumption of compulsion, or to any defense of compulsion except that stated in Subsection (a). 8. § 7-13. Necessity Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct.↩
9. T.C. Memo. 1964-153↩.
10. We also note that even if respondent's motion were granted, we would still probably have a trial on the issue of fraud. It is clear that petitioner's subjective beliefs as to his relationship to the people whose names are listed in n.5, supra, would be relevant to the question of fraud. See Wilson v. Commissioner,76 T.C. 623 (1981); Hollman v. Commissioner,38 T.C. 251 (1962). We would expect petitioner to present the same evidence with respect to the fraud issue, as he would with respect to the inclusion in income issue. Consequently, granting respondent's motion would not serve the purpose of avoiding, or even substantially reducing the extent of, a trial. This fact, alone, might justify denying respondent's motion. See Powell v. Radkins,506 F.2d 763, 765 (CA5 1975); Taylor v. Rederi A/S Volo,374 F.2d 545, 549↩ (CA3 1967). However, in light of our discussion above, we need not rest our decision on respondent's motion on this possibility.