Frederick L. WEBB, Plaintiff,

v.

INTERNAL REVENUE SERVICE
of the UNITED STATES of
America, Defendant.

Civ. A. No. 90–11009–Y.

United States District Court,
D. Massachusetts.

May 25, 1993.

Joseph J. Brodigan, Langan, Dempsey & Brodigan, Boston, MA, James M. Murphy, Norwood, MA, for plaintiff.

Susan M. Poswistilo, U.S. Atty's. Office, Boston, MA, Henry J. Riordan, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

The main issue to be decided on this motion for summary judgment is whether funds embezzled from disbursements of a federal storm disaster relief loan are taxable income to the embezzler. The plaintiff, Frederick L. Webb ("Webb"), contends that, since he always intended to repay the embezzled loan funds, they are properly categorized for tax purposes as a loan and should not have been assessed as income to him in the year of embezzlement. The Internal Revenue Service ("IRS") responds that an embezzler's intentions are irrelevant and that misappropriated funds which provide an economic benefit to the wrongdoer are taxable as matter of law. The material facts are not in dispute.

## I. FACTUAL BACKGROUND

In February, 1978, a blizzard struck Massachusetts, leaving many shorefront communities, including Scituate, with substantial property damage. In due course, the Small Business Administration ("SBA") undertook the disbursal of federal storm disaster relief funds to those in Massachusetts who had incurred property damage as a result of the blizzard. In July, 1978, Webb, as sole trustee of River Realty Trust, owner of the South

River Marina in Scituate, applied to the SBA for a loan to fix damaged real estate, purchase replacement inventory, and refinance existing loans. The SBA loaned River Realty Trust $376,900, disbursing $170,350 of the funds in 1978. The balance of the loan was never disbursed and, on October 13, 1981, Webb was convicted of making false statements to the SBA in violation of 15 U.S.C. § 645 [1], and of five counts of embezzlement totalling $64,730 in SBA funds in violation of 18 U.S.C. § 641.[2] On September 21, 1981, he received a suspended sentence of two years and three years probation, conditioned on payment of a $5,000 fine.

Webb filed no tax returns for the years 1978 and 1979 until 1980 and 1981, respectively. On March 7, 1986, the Internal Revenue Service notified Webb of tax deficiencies for those years. Specifically, the IRS claimed Webb owed $37,369 in unpaid taxes plus penalties and interest of $10,016 for 1978, basing its calculations on the $64,730 of embezzled federal funds and another $8,610 of undeclared income which the IRS said Webb had embezzled from the Scituate Harbor Marina. The IRS also assessed additional taxes of $1,529 plus penalties and interest of $500 for tax year 1979, basing that assessment on $8,175 of undeclared income also embezzled from the Scituate Harbor Marina.

Two years later Webb paid the additional assessments and then, in August, 1989, filed refund claims with the IRS for the additional taxes paid for 1978 and 1979. The claim consisted of two 1040X Amended Tax Returns, one for each tax year, requesting refunds of $37,369 for 1978 and $1,529 for 1979.

An attached statement presented the following grounds for the refund:

> Taxpayer argues that the so called embezzled funds in question were loans and therefore, not includible in gross income. Taxpayer has repaid all of the funds borrowed from the SBA. Taxpayer intended to repay all of the amounts borrowed from the SBA at all times.

Appended to the administrative claim is a statement by Webb's attorneys to the effect that they did not wish to pursue an appeal through the IRS and were requesting that the refund application be rejected.[3]

## II. ANALYSIS

Evidently, the request of Webb's attorneys was granted, because in April, 1990, Webb filed an action with this Court pursuant to 26 U.S.C. §§ 6532 and 7422 to recover the 1978 and 1979 assessments he had paid the IRS.[4] After delays due to Webb's difficulties in responding promptly to discovery requests, the IRS moved for summary judgment, arguing: 1) the Court lacks jurisdiction to hear this action since Webb's administrative claim for a refund was insufficiently specific; 2) Webb's assertion of an intention to repay is irrelevant since embezzled funds which provide economic benefit to the wrongdoer are taxable as income; and 3) Webb is collaterally estopped from denying that he embezzled the SBA funds because of his conviction.

Summary judgment is proper only if the record shows "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). "A material issue is one which affects the outcome of the litigation." *Hahn v. Sargent,* 523 F.2d

---

1. This count charged Webb had submitted a backdated purchase and sale agreement documenting his ownership of the Trust shares prior to the blizzard when, in fact, he did not own them until some months after.

2. As charged in the indictment, on September 14, 1978, Webb used $19,000 of the SBA funds towards the purchase of Humarock Garage (Count IV); on September 25th, $5,000 to purchase a cranberry bog (Count V); on October 2nd, $6,730 to purchase the garage inventory (Count VI); on October 17th, $24,000 towards the purchase of Humarock Garage (Count VII); on October 27th, another $10,000 towards the purchase of Humarock Garage (Count VIII).

3. Webb's application is a model of selective presentation. Before stating the grounds for a refund, Webb reveals that he pled guilty to the charge of making false statements to the SBA but neglects to mention his conviction for embezzlement. This omission allows the implication that the IRS's characterization of the SBA funds as embezzled is speculative when, in fact, Webb's conviction on these counts precludes him from re-litigating this issue.

4. Webb asks for a refund of $170,715.90 plus interest and costs. He claims to have paid this amount to the IRS in 1988, although how much of this is attributable to the contested assessments remains unclear.

461, 464 (1st Cir.1975). Webb responds to the motion by the IRS by asserting that he at all times intended to repay and did repay the embezzled SBA funds, and that this fact is material to the issue before the Court. He submits an affidavit declaring his intention along with a schedule of completed loan payments kept by the SBA. Webb also argues that his administrative claim was adequate to establish the Court's jurisdiction over the issues. Since this Court disagrees in part with Webb's analysis of the quality of his administrative claims, and since the case law indicates some confusion over the kinds of circumstances which justify a decision not to tax embezzled funds as income to the embezzler, both these issues must be addressed.[5]

### A. Jurisdiction over Webb's claims.

■ Although under 26 U.S.C. § 7422(a), the Congress waived sovereign immunity for tax refund suits brought in the District Courts, that waiver requires claimants to have filed prior administrative claims for refunds with the IRS. The regulations state that such claims must ...

> set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.

26 C.F.R. § 301.6402–2(b) (Treas. Reg.1992). When a taxpayer brings a refund action in District Court on grounds not presented in the administrative claim, the action is subject to dismissal for lack of jurisdiction. *Angelus Milling Co. v. Commissioner of Internal Revenue*, 325 U.S. 293, 296–98, 65 S.Ct. 1162, 1164–65, 89 L.Ed. 1619 *reh'g denied* 325 U.S. 895, 65 S.Ct. 1562, 89 L.Ed. 2006 (1945); *Beckwith Realty, Inc. v. United States*, 896 F.2d 860 (4th Cir.1990). Such grounds must be presented with "sufficient information to allow the Commissioner to address the merits of the dispute." *Beckwith*, 896 F.2d at 862.

---

**5.** On the third point, the collateral estoppel argument advanced by the IRS fails to meet Webb's contention. As Webb makes clear in his memorandum in opposition to the motion for summary judgment, he does not deny that he embezzled the funds in question, just that his embezzlement guarantees their taxability in light of his abiding intention to repay.

■ Webb's refund application and attached statements inform the IRS that he is challenging their designation of the embezzled funds as income instead of as a loan. While cursory, his application therefore provides sufficient notice to the IRS of the grounds on that part of the claim concerning the funds embezzled from the SBA. At no time, however, does the administrative application provide grounds for an appeal on the undeclared funds which the IRS said Webb had embezzled from the Scituate Harbor Marina in 1978 and 1979. Since Webb's administrative application is insufficient with regard to those claims, this Court has no jurisdiction to hear them. Therefore, summary judgment is granted on the IRS's motion as to the entire amount of Webb's assessment for tax year 1979, and for the $8,610 of undeclared income from the Scituate Harbor Marina assessed for 1978.

### B. Materiality of Webb's intention to repay the embezzled funds.

The Internal Revenue Code defines gross income as "all income from whatever source derived." 26 U.S.C. § 61(a) "An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it." *Rutkin v. United States*, 343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833 (1952). In *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), the Supreme Court reversed long standing policy by deciding that embezzled funds were to be included as gross income to the embezzler in the year in which they were mis-appropriated.[6] Following *Rutkin*, the Court reasoned:

> When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received in-

---

**6.** To the extent the victim recovers the embezzled funds, there will be a reduction for that tax year in the embezzler's income. *James*, 366 U.S. at 220, 81 S.Ct. at 1056.

come which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." In such case, the taxpayer has "actual command over the property taxed—the actual benefit for which the tax is paid," . . . This standard brings wrongful appropriations within the broad sweep of "gross income"; it excludes loans.

*James*, 366 U.S. at 219, 81 S.Ct. at 1055 (citations omitted).

The IRS, not surprisingly, argues that *James* stands for the proposition that embezzled funds by definition cannot be loans.

The reasoning of *James* is that while an embezzler has a legal obligation to repay and may intend to repay, his legal obligation and intent are not the same as an actual agreement between lendor and borrower entailing "consensual recognition" of an obligation to repay and exact conditions of repayment.

*Moore v. United States*, 412 F.2d 974, 979–980 (5th Cir.1969). *Moore* featured a controversy over whether an agreement existed between a taxpayer, now in bankruptcy, and a group of finance companies who had loaned money to the taxpayer's associates for nonexistent investments, which was then kicked-back to the taxpayer. The Fifth Circuit held that in spite of existing agreements between the taxpayer and his associates, the finance companies were not consenting parties but victims of a "swindle," and the funds obtained were income to the taxpayer.

Webb argues that since he had an agreement with the SBA, *Moore* is not controlling. He claims that his embezzlement did not nullify his intention to live up to the terms of the loan, and that under *James* he is entitled to prove his commitment to the agreement. He cites two cases in which courts have determined whether criminally misappropriated funds were bona fide loans for tax purposes by reviewing the taxpayer's intent to repay. *In re Cohn*, 25 B.R. 579 (Bankr. D.Mass.1982), like *Moore*, arose out of a bankruptcy proceeding in which a claim by the IRS was opposed by the debtor, who maintained that the fraudulently obtained funds were really loans. In spite of Cohn's conviction on several counts of larceny, the bankruptcy court, following *James* and the explication of the tax code in Mertens, *The Law of Federal Income Taxation* § 5.12 at 36 (1981), found it necessary to determine if there was evidence of an intent to repay before allowing the IRS to prevail.

The court in *Cohn* relied on *United States v. Rochelle*, 384 F.2d 748, 749 (5th Cir.1967) where, after holding that money obtained by a taxpayer convicted of operating a "swindle" (taking money in the form of loans) was taxable income to the swindler, the Fifth Circuit unhelpfully narrowed its holding to state that when loans are fraudulently obtained and it is clear that "the recipient recognizes no obligation to repay," the transaction becomes a wrongful appropriation under *James*. *Rochelle*'s wording appears to reduce *James*'s "consensual recognition" standard to the narrower standard of the recipient's intention to repay, employed, along with other factors, to distinguish bona fide loans from other transactions. Two years later, the Fifth Circuit decided *Moore*, which explicitly demands the lender's, as well as the borrower's, consent. That *Cohn*, following the wording in *Rochelle*, misread the *James* standard to demand a measure of the recipient's intention is illustrated in another case cited by the plaintiff, *In re Carmel*, 134 B.R. 890 (Bankr.N.D.Ill.1991).

There, the bankruptcy court ruled on two separate issues, the first being whether funds which the debtor had been convicted of embezzling were taxable to him. Citing *James*, the court made short work of that question, simply opining that when the embezzler had "actual command over the property taxed, he has received the actual benefit for which the tax is paid and must include such items in his taxable income." *Carmel*, 134 B.R. at 897. On the second issue, whether funds received by the debtor from his professional service corporation were properly classified as income or as bona fide loans, the court examined the debtor's intention to repay, along with other factors, before arriving at a decision.

This is not to say that *James* requires that misappropriated funds must in all circum-

stances be treated as taxable to the wrong-doer. Webb cites two important exceptions, both of them distinguishable from the facts here. The taxpayer in *Gilbert v. Commissioner of Internal Revenue*, 552 F.2d 478 (2d Cir.1977), had been convicted of federal and state charges of unlawfully withdrawing corporate funds. Contemporaneously with the illegal withdrawals, he revealed them to members of the Board of Directors and the corporate attorneys and signed promissory notes secured by personal assets valued well over the amount withdrawn. On these facts, the Second Circuit found both "an express consensual recognition" and corresponding restrictions as to the disposition of the funds, so that the taxpayer's formal conviction did not support an assignment of taxability under *James*.

Another case referred to by Webb, *In re Diversified Brokers Company, Inc.*, 487 F.2d 355 (8th Cir.1973), is a case in which the IRS appealed from a bankruptcy referee's decision denying that funds illegally "borrowed" by a corporation were taxable income to the corporation. The referee had found both express agreements by the Corporation to repay the loans, and that individual Board members illegally siphoned the funds for their own personal use. The court decided that *James* required the IRS to collect income taxes from the guilty parties, and to leave the corporation's assets to be distributed among its creditors. *Diversified Brokers*, 487 F.2d at 358. This amounted to finding that the corporation had been a simple conduit, with no control over the disposition of the funds and no cognizable benefit gained. *See also Hobson v. Commissioner of Internal Revenue*, T.C.Memo. 1992–312, 63 T.C.M. (CCH) 3085, 1992 WL 116027 (embezzler realizes income where there is cognizable benefit); *Parker v. Commissioner of Internal Revenue*, T.C.Memo. 1985–263, 50 T.C.M. (CCH) 14, 1985 WL 14891 (no collateral estoppel on issue of whether taxpayer functioned purely as conduit for other wrong-doers).

█ Neither *Gilbert* nor *Diversified Brokers* matters here. When Frederick Webb misappropriated federal storm disaster funds loaned to River Realty Trust, he violated the terms of the loan and was convicted of embezzlement. His duty to repay the funds arose inexorably from that conviction. Unlike the taxpayers in both *Gilbert* and *Diversified Brokers*, Webb neither acknowledge his violation with a contemporaneous agreement to repay the money, nor lacked a cognizable benefit. Accordingly, this Court holds that under *James*, Webb's intention to repay the SBA loan is not material, and the funds embezzled in 1978 are taxable income to him for that year. Therefore, the motion for summary judgment by the IRS on the portion of Webb's claim regarding the $64,730 embezzled from the SBA in 1978 is GRANTED.

## III. CONCLUSION

In accordance with the foregoing discussion, the IRS's motion for summary judgment is granted on all claims brought by Frederick Webb under 26 U.S.C. §§ 6532 and 7422. Judgment shall enter for the IRS.

