USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1684 FREDERICK L. WEBB, Plaintiff, Appellant, v. INTERNAL REVENUE SERVICE OF THE UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Brendan J. Shea, with whom Joseph J. Brodigan and Langan, Dempsey _______________ __________________ _______________ & Brodigan were on brief for appellant. __________ Teresa T. Milton, with whom Michael L. Paup, Acting Assistant _________________ ________________ Attorney General, A. John Pappalardo, Acting United States Attorney, ___________________ Gary R. Allen and David I. Pincus were on brief for appellee. _____________ _______________ ____________________ February 3, 1994 ____________________ CYR, Circuit Judge. We must decide whether government CYR, Circuit Judge. _____________ loan proceeds embezzled with intent to repay are taxable in the year of the embezzlement. I. I. Ronald and Sharon Pomella established River Realty Trust ("Trust"), a qualified Massachusetts business trust, as the entity which would operate the South River Marina in Scituate, Massachusetts. Under the trust agreement, Sharon was designated sole trustee and Ronald received title to all transferable Trust stock. In April 1978, Ronald sold his Trust stock to appellant Frederick L. Webb, who also became sole trustee. As sole trust- ee, Webb applied for a United States Small Business Administra- tion (SBA) storm disaster loan, representing to SBA that the marina had sustained serious damage during the blizzard of February 1978. Under SBA loan eligibility rules, applicants must have owned (or contracted to buy) the property before the proper- ty damage occurred. Appellant Webb therefore backdated the marina purchase and sale agreement to January 3, 1978. On July 15, 1978, SBA and the Trust executed a loan agreement and promissory note which provided that the Trust would use the loan proceeds ($376,900) to repair the marina ($196,900), to replace marina inventory ($2,000), and to amortize two out- standing Trust mortgages ($178,000). Webb signed the note as 2 "trustee."1 As a condition of the loan, Webb was required to _______ submit receipts evidencing payments for marina repairs. Instead, in September and October 1978 Webb diverted part of the SBA loan proceeds ($64,730) toward the purchase of a garage and inventory on a lot adjacent to the marina, and to acquire land for the Webb Cranberry Company, his personal business. The diverted funds were not reported on Webb's 1978 federal income tax return. Webb was indicted by a federal grand jury on three counts of making false statements on an SBA loan application, 15 U.S.C. 645 (1993), five counts of "embezzling" or "converting" United States government funds, 18 U.S.C. 641 (1993), and two counts of obstructing justice, 18 U.S.C. 1503, 1510 (1993). Webb pled guilty to one "false statement" count, relating to the backdated purchase and sale agreement, and to all five embezzle- ment counts, which encompassed the unauthorized diversion of the $64,730 to his personal use. Ultimately, the SBA called the loan, and Webb repaid the entire balance. In 1986, the Internal Revenue Service (IRS) assessed a $37,369 deficiency against Webb for the tax year 1978, based in part on the unreported $64,730. After Webb paid the deficiency, he filed a timely claim for refund with the IRS, asserting that the $64,730 represented bona fide loan proceeds not includable in ____ ____ gross income. After the IRS rejected the refund claim, Webb brought the present action to recover a refund. See 26 U.S.C. ___ ____________________ 1The loan was personally guaranteed by Webb and one John McNamara. 3 7422(a). The district court granted summary judgment to IRS. The court concluded, in reliance on James v. United States, 366 _____ _____________ U.S. 213 (1961), that evidence of Webb's intent to repay the embezzled SBA loan proceeds was immaterial as a matter of law. Webb v. Internal Revenue Serv., 823 F. Supp. 29, 31-33 (D. Mass. ____ ______________________ 1993). We affirm. II. II. We review the grant of summary judgment de novo, __ ____ employing the same standards incumbent on the district court. "Summary judgment is appropriate where 'the pleadings, deposi- tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Gaskell v. The _______ ___ Harvard Coop. Soc'y, 3 F.3d 495, 497 (1st Cir. 1993) (quoting ____________________ Fed. R. Civ. P. 56(c)); Vanhaaren v. State Farm Mut. Auto. Ins. _________ ___________________________ Co., 989 F.2d 1, 3 (1st Cir. 1993). In a refund action under ___ section 7422(a), the taxpayer must bear the burden of proving that the challenged IRS tax assessment was erroneous. Lewis v. _____ Reynolds, 284 U.S. 281, 283 (1932); see Bonilla-Aviles v. South- ________ ___ ______________ ______ mark San Juan, Inc., 992 F.2d 391, 393 (1st Cir. 1993) (if _____________________ nonmoving party bears ultimate burden of proof, he must present "definite" and "competent" evidence to survive summary judgment). Webb's principal protest is that the district court mistakenly concluded that it is immaterial whether he intended to repay the 4 SBA loan. III. III. The issue presented is centered at the confluence of two fundamental principles of federal tax law. On the one hand, bona fide loan proceeds are not gross income to the borrower, see ____ ____ ___ Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203, ____________ ________________________________ 207-08 (1990), because the contemporaneous economic benefit realized upon receipt of the loan proceeds is counterbalanced by the borrower's legal obligation to repay the loan. See McSpadden ___ _________ v. Commissioner, 50 T.C. 478, 491 (1968). The factual determina- ____________ tion as to whether a particular transaction is a bona fide loan ____ ____ turns on whether there are sufficient indicia of the parties' intention that the monies advanced were to be repaid. See ___ Crowley v. Commissioner, 962 F.2d 1077, 1079 (1st Cir. 1992); _______ ____________ Moore v. United States, 412 F.2d 974, 978 (5th Cir. 1969). At _____ ______________ the same time, a line of Supreme Court cases indicates that monies and other property acquired by misappropriation must be reported as income in the year of their receipt. See James v. ___ _____ United States, 366 U.S. 213, 221 (1961) (embezzlement proceeds); ______________ Rutkin v. United States, 343 U.S. 130, 137-38 (1952) (extortion ______ ______________ proceeds). The lot of the embezzler was not always so bleak. Rather, in Commissioner v. Wilcox, 327 U.S. 404 (1945), the Court ____________ ______ held that embezzled monies were not income because the embezzler ___ held the monies "without any semblance of a bona fide claim of 5 right" and "under an unqualified duty and obligation to repay . . . ." Id. at 408. Later, however, in a closely analogous ___ context, the Court held that extortion generates taxable earn- ings. Rutkin, 343 U.S. at 138-39 (without explanation, limiting ______ Wilcox "to its facts"). The James Court, confronting the seeming ______ _____ anomaly created by Wilcox and Rutkin, overruled Wilcox and flatly ______ ______ ______ rejected the taxpayer's contention that "all unlawful gains [e.g., extortion earnings] are taxable except those resulting ____ ______ from embezzlement . . . ." James, 366 U.S. at 219 (emphasis _____ added). The Court explicated its holding as follows: Whenever a taxpayer acquires earnings, law- fully or unlawfully, without the consensual ___ __________ recognition, express or implied, of an obli- ___________ __ __ _____ gation to repay and without restriction as to ______ __ _____ their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not enti- tled to retain the money, and even though he may still be adjudged liable to restore its equivalent." In such case, the taxpayer has "actual command over the property taxed the actual benefit for which tax is paid . . . ." This standard brings wrongful appropri- ations within the broad sweep of "gross in- come"; it excludes loans. __ ________ _____ Id. at 219-20 (citations omitted) (emphasis added). Since James, ___ _____ the mere fact that an embezzler originally acquired lawful access to monies in a fiduciary capacity does not foreclose their taxation in the year of the embezzlement. In a refund action under section 7422(a), therefore, James presumably requires that the taxpayer prove either (i) that _____ ______ he did not "acquire" earnings or (ii) that any such earnings were __ "acquired" in one of two ways: under a "consensual recognition 6 of an obligation to repay" or subject to restrictions on their disposition. Since the James Court did not elaborate on the _____ meaning of "consensual recognition," however, see id. at 221-22, ___ ___ some post-James case law suggests that a taxpayer who misapp- _____ ropriates monies, yet casts the transaction in the form of a ____ "loan" obligation, may foreclose summary judgment by establishing a genuine issue as to his subjective intention to repay. See, ___ e.g., United States v. Rosenthal, 470 F.2d 837, 841-42 (2d Cir. ____ _____________ _________ 1972) (reviewing factual findings of intent to repay), cert. _____ denied, 412 U.S. 909 (1973). ______ IV. IV. Webb's argument seems to be that the last three words in the above-quoted passage from James ("it excludes loans"), see _____ ___ supra at p. 6, required the district court to consider whether he _____ had a bona fide intention to repay. Thus, Webb would character- ____ ____ ize the events relevant to tax year 1978 as follows: although the Trust was the named borrower on the SBA note, Webb was the de __ facto borrower, and his signature on the note, whether as trustee _____ or guarantor, betokens his continuing and binding obligation to repay SBA.2 Therefore, he acquired the $376,900 (including the ____________________ 2The parties have generated considerable needless confusion concerning the nature and timing of the taxable event at issue in this case. In its appellate brief and at oral argument, IRS suggested that Webb may have embezzled the SBA loan funds at the time he submitted the false loan application and the backdated purchase agreement to SBA, since the SBA would not have approved the loan to the Trust "but for" those misrepresentations. In other words, Webb was not qualified for the loan, hence he never acquired lawful access to the loan proceeds. 7 $64,730) under a "consensual recognition of an obligation to repay," James, 366 U.S. at 219, and no taxable event occurred in _____ July 1978. Moreover, no taxable event occurred in September- October 1978 because either (1) he did not "acquire" any loan funds in September-October 1978 (but merely applied funds he had previously acquired to a use not authorized under the SBA loan __________ agreement),3 or (2) if he first "acquired" the loan funds in September-October 1978, either from the Trust or the SBA, he nonetheless had a preexisting contractual obligation to repay the ___________ $376,000, which SBA could have enforced at any time. V. V. ____________________ We do not address this broader contention for three reasons. First, if the IRS's characterization were correct, the entire loan proceeds of $376,900 would have been taxable to Webb, or at least the disbursements of $170,350 to the Trust and $178,000 to amortize the Trust mortgages. IRS has never asserted that these portions of the loan proceeds were taxable to Webb upon receipt. Second, the record is unclear whether Webb's false statement (i.e., the backdating of the marina purchase-sale agreement) was ____ "material" to SBA's decision to grant the Trust loan, nor is it clear that Webb's guilty plea under 15 U.S.C. 645 would fore- close relitigation of this particular issue, see, e.g., United ___ ____ ______ States v. Carter, 526 F.2d 1276, 1278 (5th Cir. 1976) (any ______ ______ ___ "false" statement), especially given the record evidence that Webb induced the SBA loan with the aid of unscrupulous SBA insiders. Finally, the five "embezzling" counts charge that Webb's unlawful "acquisition" of the loan funds occurred in September-October 1978, months after Webb's loan application and ______________________ the ensuing loan approval. 3The support for Webb's implicit assumptions is unclear. See, e.g., United States v. Kristofic, 847 F.2d 1295, 1296-97 ___ ____ _____________ _________ (7th Cir. 1988) (reversing 641 "embezzlement" conviction of SBA borrower who subsequently used funds for unauthorized purposes; following their disbursement, SBA had "contract" rights, but no "property" rights); see also United States v. Lawson, 925 F.2d ___ ____ _____________ ______ 1207, 1209-10 (9th Cir. 1991) (auctioneer for SBA could not be convicted under 641 for unauthorized use of sale proceeds). 8 The record belies Webb's expedient characterization of these events. Contrary to his implicit assumption, the record reflects that the Trust, not Webb, was the borrower, and there- ___ ____ ________ fore, absent evidence or developed argumentation to the contrary, see Rhode Island Hosp. Trust Nat'l Bank v. Howard Communications ___ ___________________________________ _____________________ Corp., 980 F.2d 823, 828 n.8 (1st Cir. 1992), we must treat the _____ Trust as the separate juridical entity which "acquired" the entire loan proceeds ($376,900) in July 1978. Cf. Moline Proper- ___ ______________ ties, Inc. v. Commissioner, 319 U.S. 436, 439 (1943) (in tax ___________ ____________ cases, corporate form will not be disregarded to allow reassign- ment of corporate tax consequences to individual shareholder); Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 419 (1932) ______ _____________________________ (only in "unusual cases" will court disregard corporate form, and rarely where that formality was previously wielded by taxpayer to reap tax benefits); Town of Brookline v. Gorsuch, 667 F.2d 215, _________________ _______ 221 n.4 (1st Cir. 1982) ("It is almost black-letter law that for purposes of the Internal Revenue Code, distinctions between a corporation and its shareholders will be observed . . . because the Code provides both benefits and burdens based explicitly on the existence of at least formally independent corporations . . . .").4 In September-October 1978, Webb breached his fidu- ciary duty and "acquired" the $64,730 from the Trust by applying ____ ___ _____ ____________________ 4Massachusetts business trusts apparently possess many essential attributes of corporations, see Mass. Gen. L. ch. 182, ___ 1-14 (1993); Swartz v. Sher, 344 Mass. 636, 639 (1962). ______ ____ Moreover, the appellate record contains evidence (a copy of the 1979 Trust corporate income tax return) suggesting that Webb has found it advantageous to treat the Trust as a discrete taxable entity. See Burnet, 287 U.S. at 419. ___ ______ 9 it to his personal use. Under James, Webb's fiduciary duty as ________ _____ sole trustee, see Terrydale Liquidating Trust v. Barness, 642 F. ___ ___________________________ _______ Supp. 917, 919 (S.D.N.Y. 1986) (trustee of Massachusetts "busi- ness trust" acts under a fiduciary duty); Loring v. United ______ ______ States, 80 F. Supp. 781, 785 (D. Mass. 1948) (same), standing ______ ________ alone, would be inadequate, as a matter of law, to generate a _____ trialworthy issue respecting his alleged intent to repay the Trust. Webb, who bears the ultimate burden of proof, failed to produce any evidence that the Trust formally loaned him the $64,730, or that the Trust, as the putative "lender" under the relevant James analysis, "consensually recogni[zed]" Webb's _____ obligation to repay the funds to the Trust. Cf. Crowley, 962 ___ _______ F.2d at 1079 (listing indicia of nontaxable "loan" to sharehold- er, as distinguished from taxable "constructive dividend," including, inter alia, taxpayer's control over corporation, use _____ ____ of customary loan documents). Thus, Webb's alleged obligation to repay SBA is immaterial to the taxability of the September- ___ October 1978 "acquisitions."5 Regardless of the precise reach of the James "consensual recognition" test, therefore, Webb _____ failed to demonstrate a genuine issue of material fact with respectto hisintentionto repaythe $64,730embezzledfrom theTrust.6 ____________________ 5Webb's potential liability as guarantor or trustee does not alter the essential fact that the Trust was the SBA borrower to which the loan proceeds were disbursed. 6Moreover, by his guilty plea Webb is collaterally estopped from claiming that he personally "acquired" the $376,900 (inclu- __ ding the $64,730) prior to September-October 1978. See 1B James ___ W. Moore, Jo D. Lucas, Thomas S. Currier, Moore's Federal Prac- _____________________ tice 0.418[1], at 557 (2d ed. 1992) (guilty pleas are conclu- ____ 10 Affirmed. Affirmed. ________ ____________________ sive against defendant in subsequent civil suit as to all facts necessarily "decided" as predicate for criminal conviction); Fontneau v. United States, 654 F.2d 8, 10 (1st Cir. 1981) ("Re- ________ _____________ litigation of such issues [in a civil tax proceeding] . . . 'simply because the [] court's decision [to accept the guilty plea] may have been erroneous' is not . . . allowed.") (quoting Allen v. McCurry, 449 U.S. 90, 101 (1980)). In order to have _____ _______ been convicted of "embezzling" $64,730 in September-October 1978, as alleged in the indictment, see supra note 2, Webb would have ___ _____ had to "acquire" monies of a third party at that time, either __ ____ ____ directly from the SBA, or from the Trust. See United States v. ___ _____________ Lawson, 925 F.2d 1207, 1209 (9th Cir. 1991) (an essential element ______ under 18 U.S.C. 641 is misappropriation of property of the United States ("money . . . or thing of value of the United States")). One cannot embezzle from oneself. Thus, Webb effec- tively conceded that he "acquired" the $64,730 in September- October 1978, at the earliest. __ ___ ________ 11